UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

*FILED*
*04 JAN 13 PM 3: 10*
*CLERK U.S. DISTRICT COURT*
*SOUTHERN DISTRICT OF ILLINOIS*
*EAST ST. LOUIS OFFICE*

| | | |
|---|---|---|
| DAVID BERGER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No: 00-584-DRH |
| | ) | |
| XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND INCENTIVE AWARDS

Class counsel, pursuant to Rule 54, Fed.R.Civ.P., requests the Court award attorneys' fees and costs pursuant to the common fund doctrine, and incentive awards for the named plaintiffs. Class counsel moves for an award of 31% of the fund created by this litigation, and incentive awards of $20,000 each for Mr. Berger and Mr. Tsupros, to be paid out of the attorneys' fees and costs award. As demonstrated more fully below, the requested fee and costs award is consistent with the controlling case in this Circuit, *In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001) (*Synthroid I*), and is otherwise appropriate. *See also In re Synthroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003) (*Synthroid II*).

Factual Background

This litigation was commenced on July 25, 2000. The litigation concerns the Xerox Retirement Income Guaranty Plan's computation of lump sum distributions from so-called cash balance accounts. At the time the litigation was commenced, only two decisions had considered issues similar to those raised here, and both decisions were summary judgment orders rejecting the plaintiffs' claims. *Esden v. Bank of Boston*, 182 F.R.D. 432 (D. Vt. 1999); *Lyons v. Georgia Pacific Corp. Salaried Ret. Plan*, 66 F.Supp.2d 1328 (N.D. Ga. 1999). No case had ever even

addressed the so-called pre-retirement mortality issue. Thus, while the law on the whipsaw issue developed favorably to the Plaintiffs here *after* this case was filed (largely as a result of their counsel's efforts), at the time Class Counsel undertook the representation, the odds were low that Plaintiffs would prevail, and they faced an uphill battle against a well-financed adversary and prominent defense counsel with abundant legal resources.

At the time of filing, Class Counsel could not estimate how large the potential recovery might be. The *Esden* matter, where Class Counsel Katz and Sprong represented the class, ultimately produced a settlement of approximately $7.5 million with some 5,000 class members. The two named Class representatives, Mr. Berger and Mr. Tsupros, did not have enormous potential damages; in fact, under the projection methodology ordered by the Court and affirmed by the Seventh Circuit, neither Mr. Berger nor Mr. Tsupros were entitled to additional benefits as a result of actuarial errors in the computation of their Cash Balance Retirement Account lump sums (Mr. Tsupros recovers some $15,000 as a result of his RIGP Plus). Thus, there was no evidentiary basis for Class Counsel to conclude that the ultimate recovery would be grossly disproportionate to the recovery in *Esden*. Defendant Xerox Retirement Income Guaranty Plan (the "Plan") controlled all relevant information.

On July 27, 2001, the Court entered partial summary judgment holding that the Plan had violated ERISA and the Internal Revenue Code as a result of the manner in which it determined the accrued benefit and resulting lump sum distributions attributable to two defined benefits in the Plan known as Cash Balance Retirement Accounts ("CBRAs") and RIGP Plus Accounts. The Court also directed the Plaintiff to submit a report as to the amount of additional benefits owed to the Class members as a result of the foregoing violations.

In response to the Court's Order, Class Counsel submitted a benefits spreadsheet for the individuals for whom the Xerox Plan has produced sufficient recalculation information, the affidavit of an enrolled actuary regarding same, an affidavit from the data entry coordinator, and legal argument as to both the additional benefits owed and the appropriate amount of prejudgment interest for those Class members entitled to additional benefits.

On September 6, 2002, the Court held a hearing on the amount of additional benefits owed. On September 30, 2002, the Court entered its Order and Final Judgment in this matter. The Order adopted the recalculation methodology employed by Class Counsel, and directed the RIGP to pay restitution in the amounts set forth in the spreadsheet and/or pursuant to the methodology set forth therein.

The Plan filed an immediate appeal and fought an unrelenting battle to overturn this Court's decision. The Plan filed an extraordinary number of motions in the Court of Appeals, and Plaintiffs defeated the attempts of prominent interest groups to file amicus briefs supporting the Plan's positions.

On August 1, 2003, the United States Court of Appeals for the Seventh Circuit affirmed, as modified, this Court's opinions herein. *Berger v. Xerox RIGP*, 338 F.3d 755 (7th Cir. 2003). As modified, the judgment in this case totals some $255 million in additional benefits. It is one of the largest pension cases ever litigated to a judgment. Based upon the obstacles and risks facing Plaintiffs when this suit was filed, this result is astounding.

For reasons more fully set forth in the Plaintiffs' Motion for Final Approval, Class Counsel negotiated a settlement of the aforesaid judgment. The small discount from the judgment amount produces a settlement fund of approximately $239 million.

3

Class counsel is seeking an attorneys' fees and costs award pursuant to the common fund and/or benefit doctrine. *See, e.g., Boeing v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980); *Trustees v. Greenough*, 105 U.S. 527 (1881). The undisputed evidence shows that the market rate for attorneys' fees in this type of litigation is 33⅓% of any recovery plus costs. The evidence also demonstrates that the market rate for employment lawyers in this community is between 33⅓% and 40% of any recovery, plus all expenses and costs. Thus, at 31% including out-of-pocket costs, Class counsel's request for fees is *below* the market rate.[1]

On December 15, 2003, Class Counsel mailed notice of the proposed settlement and attorneys fee request to the last known addresses of the Class members listed on the spreadsheets provided to the Court. The notice included a court-ordered procedure by which an individual Class member could object to the fee requested by Class counsel and dictated that such objections be filed with the Court by January 5, 2004. Only eight (8) of the Class members timely objected to the requested fee, or about .05%. Of these objectors, only three (3) of them are receiving additional benefits as a result of the judgment and therefore only those three Class members have standing to object.[2] One Class member who is receiving additional benefits, and one who is not, untimely filed objections to the fee request on January 7, 2004 and January 13,

---

[1]Class counsel has incurred over $300,000 in costs to date.

[2]*See In re First Capital Holdings Corp. Financial Products Securities Litigation*, 33 F.3d 29, 30 (9th Cir. 1994), dismissing appeal of class member who objected to class counsel fee award because she lacked standing. The class member was not entitled to an award of damages and therefore was not "aggrieved" by the attorney's fees award.

2004, respectively.  Although these objections should be overruled as untimely,[3] they can also be overruled on the merits.

<u>Legal Analysis</u>

    1.    <u>A Common Benefit Fee Is Appropriate.</u>

It is entirely appropriate to award Class Counsel a percentage of recovery fee in this ERISA litigation.  *Florin v. Nationsbank*, 34 F.3d 560, 563 (7th Cir. 1994); *Tullock v. K-Mart Corporation Employee Retirement Plan*, No. 99-289-DRH (S.D. Ill. July 2002); *Malloy v. Ameritech, et al.*, Civ. No. 98-1044 GPM (S.D. Ill. July 21, 2000); *Seifert v. May Department Stores Pension Plan*, Civ. No. 96-1028 GPM (S.D. Ill., the Honorable G. Patrick Murphy, presiding); *Medeika v. SNET Pension Plan*, Civ. No. 3:97CV01123(DJS) (D. Conn. 1999); *Local 56, United Food and Commercial Workers Union v. Campbell Soup Company*, 954 F. Supp. 1000 (D.N.J. 1997); *In re Unisys Corporation Retiree Medical Benefits ERISA Litigation*, 886 F. Supp. 445, 456 (E.D. Pa. 1995); *Bowen v. Southtrust Bank of Alabama*, 760 F. Supp. 889 (M.D. Ala. 1991); *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 561 F. Supp. 687 (N.D.N.Y. 1983); *Eaves v. Penn*, 587 F.2d 453 (10th Cir.1978); Mark Berlind, Attorney's Fees under ERISA: When is an Award Appropriate?, 71 Cornell L. Rev. 1037, 1060-61 (1986) ("Applying the common benefit doctrine reflects the statute's purpose....  Nothing in ERISA indicates that Congress intended to preempt the common benefit doctrine.").

As the Ninth Circuit stated in *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003), "We conclude, as have the two other circuits that have addressed the issue, that there is no preclusion on recovery of common fund fees where a fee-shifting statute applies." *Citing, e.g.,*

---

[3]*See Devlin v. Scardeletti*, 536 U.S. 1 (2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 252 (2nd Cir. 2001); *Joel v. Giuliani*, 218 F.3d 132, 139 (2nd Cir. 2000) *Gaskill v. Gordon*, 27 F.3d 248 (7th Cir. 1994) (affirming district court's dismissal of objection in class action as untimely);

*Brytus v. Spang & Co.*, 203 F.3d 238, 246-247 (3d Cir. 2000) (holding that common fund fees

can be appropriate in both settled and litigated cases where statutory fees are available); *Cook v.*

*Niedert*, 142 F.3d 1004 (7th Cir. 1998) (approving fees measured by common fund rather than

statutory principles where statutory fees were available). *See also Boeing v. Van Gemert*, 444

U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980) (applying common benefit fee in case

litigated to judgment). This reasoning is particularly appropriate here, where an award of

attorneys fees under ERISA's fee-shifting statute is not automatic and depends upon a variety of

factors. *E.g. Quinn v. Blue Cross & Blue Shield Ass'n.*, 161 F.3d 472, 478 (7th Cir. 1998)

(describing five factor test for award of fees to prevailing party). Thus, even where the plaintiffs'

attorney believes from the outset that his clients' case will likely prevail, which was not the case

here, there is no guarantee that a victory on the merits will result in a statutory fee award.

    2.    <u>Percentage of the Fund is an Appropriate Award.</u>

    The Seventh Circuit has indicated that "the decision whether to use a percentage method

or a lodestar method remains in the discretion of the district court." *Florin v. Nationsbank of*

*Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). The Seventh Circuit has noted that in common

fund/benefit cases, "the measure of what is reasonable [as an attorney fee] is what an attorney

would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231

F.3d 399, 408 (7th Cir. 2000) (affirming district court's award of 25% of the common fund and

reversing district court's refusal to also award class counsel a share of the stock obtained for the

class); *see also In re Continental Illinois Securities Litigation*, 985 F.2d 867 (7th Cir. 1992) (writ

of mandamus issued to district court for failure to base contingent fee sought by class counsel on

contingent fees set by arms-length contracts in comparable commercial litigation). Thus, "[t]he

approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the

6

benefit conferred upon the class," particularly where that percentage of the benefit approach replicates the market. *Williams v. General Electric Capital Auto Lease*, 1995 WL 765266, *9 (N.D. Ill. 1995); *see also Long v. Transworld Airlines, Inc.*, 1993 WL 121824, *1 (N.D. Ill. 1993). This is particularly true in light of the *Synthroid I* and *Synthroid II* decisions, wherein the Seventh Circuit now essentially dictates a percentage fee where the evidence before the district court shows that such a fee is the "market" for such litigation.

In the case at bar, the uncontested evidence was that no competent attorney would have taken this case on any basis other than a contingent fee basis. Class representative Gerry Tsupros testified that he would not have hired Class counsel on an hourly basis, and the individual recoveries of the other Class members strongly suggest that none of them would have agreed to pay an hourly fee plus costs in return for the prospect of recovering less than the final hourly fee and costs bill. Class counsel are nationally recognized experts in ERISA pension benefit cases and have testified that they have not and would not accept a similar case on any basis other than a contingency fee basis. Thus, the undisputed evidence is that the market for legal services for this litigation is a contingency fee contract.

3.    Size of the Fund/Benefits.

The Seventh Circuit has rejected the so-called megafund cap. *In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001) (reversing trial court's 10% fee award for a determination of the market rate for such litigation). Thus, the size of the recovery in this case does not impact the determination of an appropriate percentage fee. As the *Synthroid* case instructs, such an approach

> cannot be reconciled with the approach our opinions adopt. We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, court must do their

best to award counsel the market price for legal services, in light of the risk of non-
payment and the normal rate of compensation in the market at the time.

264 F.3d at 717. The *Synthroid* Court instructed

> On remand, the district court must estimate the terms of the contract that private plaintiffs
> would have negotiated with their lawyers, had bargaining occurred at the outset of the
> case (that is, when the risk of loss still existed). The best time to determine this rate is the
> beginning of the case, not the end (when hindsight alters the perception of the suit's
> riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too
> low). This is what happens in actual markets. Individual clients and their lawyers *never*
> wait until after recovery is secured to contract for fees.

*Id.* at 718 (emphasis in original).

4.    The Percentage Requested Is Appropriate.

As noted, the Seventh Circuit has emphasized that an appropriate manner of setting a fee

is to award Plaintiffs' counsel the same percentage of the common benefit as they could expect to

get if they negotiated a percentage contingent fee contract with a private client in comparable

commercial litigation. *Synthroid I*, 264 F.3d at 718; Gaskill v. Gordon, 160 F.3rd 361 (7th Cir.

1998) (affirming 38% fee award), citing Maksym v. Loesch, 937 F.2d 1237, 1246 (7th Cir.

1991); see also Matter of Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992),

("Continental Illinois I"), later proceeding, 985 F.2d 867 (7th Cir. 1993), ("Continental

Illinois II"). As Judge Posner emphasized in Continental Illinois I:

> The object in awarding a reasonable attorneys fee. . . is to simulate the market. . . The
> class counsel are entitled to the fee they would have received had they handled a similar
> suit on a contingent fee basis with a similar outcome, for a paying client.

Continental Illinois I, 962 F.2d at 572.

The *Synthroid I* decision sets forth three benchmarks in reaching the "market rate," the

first and foremost of which is the actual agreement negotiated prior to commencement of the

litigation. *Id.* at 718-19. The actual agreements negotiated prior to commencement of this case

call for the payment of a one third of any recovery fee plus costs. Thus, the primary benchmark identified by the *Synthroid I* Court recommends an award higher than the 31% award requested by Class Counsel.

Class Counsel's contractual fee percentage is not unique. The uncontested evidence in this matter shows that 31% of any recovery, plus costs, is at or below the market rate in similar contingency fee matters. Ferne Wolf, a prominent St. Louis employment lawyer, testified that her firm would only undertake a contingency fee matter for 40% plus costs. She also testified that her firm would not have handled a case like the one at bar but instead would have referred it to Class counsel. Stephen R. Bruce, a nationally known pension lawyer from Washington, D.C., also gave his declaration in support of the fee request. Mr. Bruce also noted that Class counsel are among the finest pension lawyers in the entire country.

The second and third "benchmarks" the *Synthroid I* Court identified—fee agreements by large claimants in similar litigation and auction criteria in securities disputes—are specifically identified by the *Synthroid I* Court as securities-oriented criteria. As such, they are difficult to apply to this litigation. A typical pension dispute involves a claim of at most several thousand dollars by an individual who likely has limited understanding of the complex actuarial concepts that underlie his claim. Moreover, there are no "auctions" to determine class counsel fees in ERISA cases.

Nevertheless, applying the large claimant criterion here supports the 31% fee requested by Class Counsel. The *Synthroid II* Court noted that the sophisticated third-party payors (the insurance companies) in that litigation negotiated a flat 22% rate **even after the risk of the litigation had passed and a recovery was assured**. 325 F.3d at 976 and 978 (explaining the 22% rate was agreed to "after a good deal of the risk had been dissipated" and that the TPPs still

9

"had to offer 22% to sign up lawyers on a contingent fee."). Applying this reasoning to this case, the risk attendant with this litigation (and inherent in all ERISA litigation) and the difficulty locating experienced counsel to accept such litigation clearly support a 31% fee. *See also ETSI Pipeline Project v. Burlington No.*, Civ. No. B-84-979 CA (E.D. Tex. 1989) (plaintiffs' counsel prosecuted a private case on a 33% contingency fee and a third of a $635 million settlement).

The absence of any auctions to determine is undoubtedly due to the specialized nature of ERISA claims and the complexity of handling such matters. As nationally known pension lawyer Mr. Bruce opines, there are only a handful of lawyers in the country who practice in this area (compare this to the thousands of attorneys who practice securities litigation). However, even assuming the Court could have devised an auction scenario for this case, on the basis of the testimony before the Court from the various benefits lawyers, the only reasonable conclusions are that the rates would be the same or more than the 31% rate proposed by Class Counsel and that Class Counsel's skill and expertise in handling such matters would have prevailed over a lesser bid from less experienced and accomplished counsel. Ms. Wolfe testified that she would not bid below her standard 40% rate. Mr. Bruce testified that the rate proposed is within a reasonable range and that he also negotiates percentage of recovery fees. Thus, under the standards enunciated in *Synthroid I* and *Synthroid II*, Class counsel's 31% request (inclusive of costs) is at or below what application of an "auction" scenario likely would have determined.

In this Circuit, a fee award of 33⅓% in class action litigation is not uncommon. The utilization of the market percentage method in the courts of the Seventh Circuit, as one Court has observed, results in awards of attorneys' fees "equal to approximately one-third or more of the recovery." *See Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 at *27 (N.D. Ill. Oct. 10, 1995) (citations omitted); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d

1002, 1033 (N.D. Ill 2000) (recognizing "the established 30% benchmark for an award of fees in

class actions."). Northern District of Illinois decisions, which are numerous and are informed by

Seventh Circuit "marketplace" analysis typified by *Continental I and II*, reflect an actual range of

29% to 39% of the recovery.[4] Following the foregoing precedent, this Court recently awarded

Class Counsel 29% in both the *Tullock* and *MCI* litigation, awarded Class Counsel 29% in the

*Malloy* litigation last year (Judge Murphy) and 29% in the *Seifert* action approximately two years

ago (Judge Murphy).

It is important to note that all of the foregoing cases ended in a settlement *prior* to final

judgment, whereas Class counsel in this action prevailed not only here but also in the Seventh

Circuit before agreeing to a small discount from the judgment to secure other advantages for the

Class. Indeed, Plaintiffs faced nearly four years of resolute opposition every step of the way, as

the Plan argued in the Seventh Circuit and to Supreme Court Justice Stevens that this Court's

judgment was erroneous and that Plaintiffs were entitled to no damages whatsoever.

5.     The Class Member Objections Should Be Overruled.

The fee request is strongly supported by the negligible number of objections that were

submitted by Class members. The percentage of Class members opposing the request is much

lower than the rates of opposition and exclusion in class action settlements that have been

approved by courts: *see, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)

---

[4]*See, e.g., In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997)
(awarding 33% of common fund); *In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997)
(awarding one-third of fund); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov. 27,
1996) (awarding one-third of fund); *Feldman v. Motorola, Inc.*, No. 90 C 5887 (N.D. Ill. June 28,
1995) (awarding 30% of common fund); *Spicer v. Chicago Board Options Exchange, Inc.*, 844
F. Supp. 1226 (N.D. Ill. 1993) (awarding 29% of common fund); *First Interstate Bank of
Nevada, N.A. v. National Republic Bank of Chicago*, No. 80 C 6401 (N.D. Ill. Feb. 12, 1988)
(awarding 39% of common fund).

(the fact that "only" approximately 10% of class members objected "strongly favors settlement"); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (affirming district court's approval of class action settlement over opposition of 36% of class); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (affirming district court's approval of class action settlement despite objection of class member who owned 50% of shares affected by settlement); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (approving settlement over objections of counsel purporting to represent nearly 50% of class). The *de minimis* level of Class member disapproval here is especially significant in light of two direct notices that have been provided.

The four objections' lack of substance also requires that they be overruled. The four Class member objections fall into three general categories: the percentage requested is too high because of the size of the recovery (1), the attorneys' fee should be limited to an hourly award with a multiplier in light of the size of the recovery (1 timely, 1 untimely), and the defendant should pay the award (1).

The undisputed evidence in this matter shows that the percentage requested (31%) is at or below the market rate. *See* Affidavit of Douglas R. Sprong, Declarations of Stephen R. Bruce and Ferne P. Wolf. As explained above, the goal in the Seventh Circuit in setting a percentage is to mirror the market. The market is determined before the recovery is known for, as Judge Easterbrook notes in *Synthroid I*, no one negotiates a fee after the case is over. The *only* evidence in this matter is that the market rate or percentage for similar litigation is the same or higher than what Class counsel is requesting.[5]

---

[5]The untimely objection, from an attorney Class member named Kilian, argues that the Court should limit Class counsel to a lodestar with a 1.5 multiplier and cites to *Cook v. Niedart*, 142

(continued...)

An hourly award likewise is not what the market dictates for this litigation and would be improper under *Synthroid*. According to the affidavit and declarations presented by Class counsel, no competent attorney would take on this type of litigation in return for the possibility of receiving an hourly award (even with a risk multiplier). Declaration of Stephen R. Bruce. Moreover, no plaintiff could afford to pay an hourly fee as the case proceeded in the hopes that his attorney would recover those fees at the end of the case. Declaration of G. Tsupros. Instead, the standard fee agreement in the market for this type of case is a contingency fee where the plaintiffs' counsel expends all of the time and resources necessary to prosecute the case and only receives a percentage of any recovery, whether by settlement or judgment. Declarations of F. Wolfe and S. Bruce, Affidavit of D. Sprong. There is no evidence to the contrary.

Finally, the existence of a possible shifting of hourly fees and costs to the Plan does not affect the propriety of awarding fees based on the common fund or benefit achieved. *Florin v. Nationsbank*, 34 F.3d 560, 563 (7ᵗʰ Cir. 1994), quoting Mark Berlind, "Attorney's Fees under ERISA: When is an Award Appropriate?," 71 Cornell L. Rev. 1037, 1060-61 (1986) ("Applying the common benefit doctrine reflects the statute's purpose.... Nothing in ERISA indicates that Congress intended to preempt the common benefit doctrine."); *see also Staton v. Boeing Co.*, 327

---

[5](...continued)
F.3d 1004 (7ᵗʰ Cir. 2001), a case decided three years before *Synthroid I*. *Cook* might permit a district court to apply the lodestar method where class counsel faced little risk and thus their efforts are fully compensable through hourly fees. *Cook* did not deal with a case, such as this one, in which 1) class counsel committed to litigating the class' claims through to judgment and appeal even though they faced a serious risk that no recovery would be made, and 2) the undisputed evidence is that the market for such representation is a contingency percentage fee and that no competent attorney would take on such litigation in return for the possibility of recovering an hourly fee with a multiplier. *Synthroid I* provides the governing law for attorney's fees awards in cases involving such risk and such evidence, and it holds that the market approach rather than the lodestar is the correct approach.

F.3d 938 (9th Cir. 2003) (no bar to common benefit award merely because a fee shift might have been awarded); *Cook v. Niedart*, 142 F.3d 1004 (7th Cir. 2001) (same); *Brytus v. Spang & Co.*, 203 F.3d 238 (3rd Cir. 2000) (same in a case litigated to judgment). There is no case holding that the presence of a fee-shifting statute precludes awarding fees under the equitable common benefit doctrine. Indeed, a fee awarded against the Plan under ERISA's fee shifting provision would be calculated under the lodestar hourly approach without any multiplier for risk, but the undisputed testimony before the Court is that no competent attorney would take this type of litigation in return for possibly receiving an hourly fee from the defendant. *E.g.* Bruce Declaration.[6]

    5.    <u>Awarding an Incentive Fee Is Appropriate.</u>

    Finally, incentive fees of $20,000 for both Mr. Berger and Mr. Tsupros are appropriate. The Seventh Circuit has indicated that incentive fees are designed to encourage individuals to become named plaintiffs. *Continental I*, 962 F.2d at 571-72. Here, Mr. Berger and Mr. Tsupros should be rewarded for their willingness to pursue relatively modest monetary claims against their former employer's pension plan on behalf of thousands of former colleagues. Granting an incentive fee will serve the added purpose of encouraging other individuals to pursue similar litigation in an effort to recover additional retirement benefits under the law.

<u>Conclusion</u>

    For all the foregoing reasons, Class Counsel ask the Court to find that an attorneys' fee and cost award of 31% of the common benefit produced by this litigation is appropriate. Such an

---

[6]This reasoning is particularly appropriate here, where an award of attorneys fees under ERISA's fee-shifting statute is not automatic and depends upon a variety of factors. *E.g. Quinn v. Blue Cross & Blue Shield Ass'n.*, 161 F.3d 472, 478 (7th Cir. 1998) (describing five factor test for award of fees to prevailing party). Thus, even where the plaintiffs' attorney believes from the outset that his clients' case will likely prevail, there is no guarantee that a victory on the merits will result in a statutory fee award.

award would be slightly below the market rate for comparable litigation and is within the customary range of awards in this Circuit. The Court should also find that the requested $20,000 incentive fees for the class representatives are appropriate.

WHEREFORE, Class counsel prays the Court enter its Order 1) awarding Class counsel 31% of the settlement fund recovered for the Class as and for Class counsel's fees and costs, and 2) approving a $20,000 incentive fee award for each of the named Plaintiffs herein to be paid from the attorneys' fee and costs award.

KOREIN TILLERY, LLC

By _____
Steven A. Katz
Douglas R. Sprong
10 Executive Woods Court
Belleville, Illinois 62226
(618) 277-1180
Fax: (618) 277-9804

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Attorneys for Plaintiffs and the Class

<u>Certificate of Service</u>

On January 13, 2004, a copy of the foregoing was mailed, postage prepaid, to Richard J. Pautler, One Firstar Plaza, 34th Floor, St. Louis, MO 63101, and Evan R. Chesler, 825 Eighth Avenue, New York, NY 10019-7475.

_____

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID BERGER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No: 00-584-DRH |
| | ) | |
| XEROX CORPORATION RETIREMENT | ) | |
| INCOME GUARANTEE PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF GERRY TSUPROS

I, Gerry Tsupros, state as follows:

1. I am one of the named class representatives in this case. I am over 21 years of age and competent to make this Declaration.

2. I hired Mr. Katz, Mr. Sprong and Mr. Carr to pursue this matter on a contingency fee basis. My contract with them calls for the payment of 33_% of any recovery, plus costs.

3. I would not have undertaken this matter if the lawyers had proposed an hourly fee contract. I understood that my prospect for a personal recovery was limited to less than $50,000, that Xerox would undoubtedly fight the lawsuit vigorously, and that the hourly fees and costs associated with pursuing the litigation would quickly exceed any recovery I might hope for. I did not have the resources to hire a lawyer on an hourly basis, and could not have afforded to pay on that basis. I also understood that there were risks associated with the litigation such that I might have spent thousands of dollars without any recovery at all. A contingency fee contract was the only viable alternative for this litigation.

4. Prior to my involvement in the case, I also understood that the case would be pursued as a class action and that the prospect for a large recovery on behalf of the class might be

achieved. However, I believed then and now that the risks, costs and efforts the attorneys would have to undertake to potentially achieve such a result justified a large attorney fee award if such a result was obtained.

5. I am not aware of another lawyer who I could have contacted to handle this litigation. I understand that my attorneys have succeeded in obtaining a very large recovery for the class. I understand that the total settlement recovery against the Xerox Plan is $239 million. I agree with the decision to settle the case on the terms set forth in the notice, and I support the attorneys' request for 31% of that recovery as and for their fees and costs.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7 JAN 2004

Gerry Tsupros

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BERGER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No: 00-584-DRH |
| | ) |
| PATRICIA M. NAZAMETZ, and | ) |
| XEROX CORPORATION RETIREMENT | ) |
| INCOME GUARANTEE PLAN, | ) |
| | ) |
| Defendants. | ) |

**Declaration of Ferne P. Wolf**
**in Support of Plaintiffs' Application for Attorney's Fees**

I, Ferne P. Wolf, being over 18 years of age and competent to testify, hereby make the

following declaration pursuant to 28 U.S.C §1746 in support of Plaintiffs' Application for

Attorney's Fees:

1. I am an attorney in private practice in St. Louis, Missouri with the law firm of Sowers

& Wolf, P.C.

2. I graduated from the National Law Center at George Washington University in 1978

and am admitted to practice law in Missouri (1978), Illinois (1992), and Texas (2001).

Throughout my legal career, I have devoted most of my practice to plaintiffs' civil rights

litigation. A substantial portion of that litigation has involved employment discrimination

claims.

3. I am on the Missouri Bar's Labor and Employment Law Committee and am Secretary

of the Sexual Orientation and Gender Identity Committee of the Illinois State Bar Association.

4. As a general rule, Mr. Sowers and I do not take ERISA pension cases because of the

technical expertise required and the costs of prosecuting them. ERISA defendants are typically

well-funded, and aggressively pursue a variety of defenses.

5.   Korein Tillery is the only law firm I know of in this area that litigates the types of cases like the one at bar.  The litigation that Class counsel handles requires expertise with ERISA's detailed requirements and actuarial concepts that few other lawyers who represent plaintiffs in the country have.

6.   I am familiar with the contingency fee contracts my firm utilizes in employment matters, as well as what other employment practitioners utilize in this market.

7.   My firm's contingency fee contracts with individuals call for a fee of 40% plus costs, and all payments are due upon receipt of our bill.  My clients generally prefer contingent fee arrangements because of the costs and risks associated with an hourly fee arrangement, where the fees and costs can quickly exceed the amount of any potential recovery.

8.   I would not have bid or contracted to take this case for less than 40% of the ultimate recovery, plus costs.  Class counsel's request for a fee of 33⅓% of the recovery, inclusive of costs, is below what is negotiated in the market.

I declare under penalty of perjury that the foregoing is true and correct.

Ferne P. Wolf

Dated: _November 3_, 2003

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

DAVID BERGER, et al.,                          )
                                               )
            Plaintiffs,                        )
                                               )
    v.                                         )      Cause No: 00-584-DRH
                                               )
PATRICIA M. NAZAMETZ, and                      )
XEROX CORPORATION RETIREMENT                   )
INCOME GUARANTEE PLAN,                         )
                                               )
            Defendants.                        )

### Declaration of Stephen R. Bruce
### in Support of Plaintiffs' Application for Attorney's Fees

I, Stephen R. Bruce, being over 18 years of age and competent to testify, hereby make the

following declaration pursuant to 28 U.S.C §1746 in support of Plaintiffs' Application for

Attorney's Fees:

1. I am an attorney in private practice in Washington, D.C.

2. I graduated from Georgetown University Law Center in 1979 and was admitted to

practice law in the District of Columbia the same year. I have specialized in the area of employee

benefits law for more than 20 years.

3. I am the author of Pension Claims: Rights and Obligations which was first published

by BNA Books in 1988, with a second edition in 1993. Pension Claims is a reference book that

examines legal issues under ERISA that are important to employees, including those involving

the service-counting and benefit accrual provisions of the statute. The Supreme Court and most

of the federal courts of appeals have cited Pension Claims. *See, e.g., Hughes Aircraft Co. v.*

*Jacobson*, 525 U.S. 432, 436 n.1 (1999); *Johnson v. Georgia Pacific Corp.*, 19 F.3d 1184, 1186

(7th Cir. 1994); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990).

4. I have served as lead counsel in litigation around the country concerning the minimum standards of the Employee Retirement Income Security Act, including five nationwide class actions. *See, e.g., Page v. PBGC*, 968 F.2d 1310 (D.C. Cir. 1992).

5. I have been active in both the ABA's Labor & Employment Law Section and the National Employment Lawyers Association for close to 15 years and have spoken at numerous programs and seminars on ERISA.

6. I have discussed ERISA issues with Bill Carr and Doug Sprong for many years. Based on my experience with them, Mr. Carr and Mr. Sprong are among the most knowledgeable plaintiffs' attorneys in the country in ERISA's requirements.

7. Litigation concerning the vesting, benefit accrual and minimum distribution provisions of the Employee Retirement Income Security Act of 1974 is time-consuming, difficult, and risky. The defendants are adept at technical rules and defenses, well-funded, and aware that losing in ERISA litigation only means that they will have to pay what should have been paid initially, with interest that is probably less than what they are earning on the withheld funds. Defendant plans and fiduciaries do not face jury trials, the risk of paying consequential or punitive damages, or even liquidated double damages. The client employees and retirees are not usually members of organized groups that will fund the fees and expenses of litigation.

8. In addition to the opinions in this case, the cases that Mr. Carr, Mr. Sprong and Mr. Katz have brought over the last 7 years have established very important precedents concerning benefit accruals and vesting under ERISA. *Esden v. Bank of Boston*, 229 F.3d 154 (2nd Cir. 2000); *Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust*, 134 F. Supp. 2d 189 (D. Mass. 2001); and *Cooper v. IBM*, 274 F.Supp.2d 1010 (S.D. Ill. 2003), each establish

2

important precedents not only for the employees directly affected by those cases but also for employees across the country who participate in similar pension plans.

9. As measured by the number of attorneys who bring these cases, this has not been a very desirable area of practice, despite its importance to millions of employees. While I am in contact with most of the ERISA practitioners who represent plaintiffs nationally, there are only a handful of plaintiffs' lawyers who have shown a willingness and ability to bring the types of actuarial-intensive cases that these attorneys are handling. The litigation that these attorneys handle requires an in-depth knowledge of ERISA's requirements and actuarial concepts that few practitioners who represent plan participants possess.

10. In litigating these cases, Mr. Carr, Mr. Sprong and Mr. Katz have performed a great service. Few lawyers with the requisite knowledge, advocacy skills, and resources have been willing or able to litigate the cases needed to establish the precedents that will make the rules on benefit accruals and minimum distributions effective. In addition, at the time this case was filed, the only two decisions on the so-called "whipsaw" phenomena were summary judgment rulings in favor of the defendants. *Esden v. Bank of Boston*, 182 F.R.D. 432 (D. Vt. 1999); *Lyons v. Georgia Pacific Corp. Salaried Ret. Plan*, 66 F.Supp.2d 1328 (N.D. Ga. 1999).

11. I have reviewed the Court opinions in *Berger*. The opinions in *Berger* (by both this Court and the Seventh Circuit) establish precisely the type of precedent that is necessary to make the rules on benefit accruals and distributions effective. I am aware that Xerox made every conceivable argument against the Class, from exhaustion of remedies to prejudgment interest, made numerous highly technical arguments under ERISA and the Tax Code, and contended that a class action was not even appropriate.

3

12.  I am familiar with attorney fee awards in ERISA cases around the country.

13. Fee awards compensate attorneys for the risk of not prevailing, as well as for the attorneys' expertise and advocacy, and their willingness to take cases on a contingent basis, including carrying expenses, and the results ultimately obtained.

14.  Fee awards in cases in which common funds or benefits are recovered are usually based on a percentage of the funds recovered.  Recent percentages have been in the range of 25%, Millsap v. McDonnell Douglas Corp., 2003 WL 21277124 (N.D. Okla. May 28, 2003) (25% is benchmark in 10th Circuit), with awards of close to 30% in two decisions where recoveries exceeded $95 million. Vizcaino v. Microsoft, 142 F.Supp. 2d 1299 (W.D. Wash. 2001), aff'd, 290 F.3d 1043 (9th Cir. 2002), cert. denied, 537 U.S. 1018 (Nov. 12, 2002) (28% award from $97 million common fund); Malloy v. Ameritech, C.A. 98-488-GPM (S.D. Ill. July 21, 2000) (29% award on $170 million recovery). The Seventh Circuit has used the percentage approach with a sliding scale in In re Synthroid Marketing Litigation, 264 F.3d 712 (7th Cir. 2001), and 325 F.3d 974 (7th Cir. 2003).

15.  I do not know of any practitioners in the market who would undertake this type of complex litigation if attorney's fees and expenses in a successful lawsuit were limited to a recovery of costs plus attorney's fees on an lodestar/hourly basis, with no recovery of either expenses or fees for an unsuccessful lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Stephen R. Bruce

Dated: November 5, 2003

4