UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

DAVID BERGER and GERRY TSUPROS, )
)
Plaintiffs, )
)
v. ) Cause No: 00-584-DRH
)
XEROX CORPORATION RETIREMENT )
INCOME GUARANTEE PLAN, )
)
Defendant. )

## CLASS COUNSEL'S MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Comes now Class Counsel, pursuant to Rule 23(e), Fed. R. Civ. P., and moves the Court to enter its Order granting final approval to the proposed settlement in this matter. As detailed below, this Court should grant final approval to the settlement of this case on the terms embodied in the Settlement Agreement, because the terms of the settlement are fair, reasonable, and adequate.

Factual Background

1. This case involves Plaintiffs' allegations that the Xerox Corporation Retirement Income Guarantee Plan (the "Plan") failed to accurately calculate the lump sum distributions the Plaintiffs and the Class members received in accordance with ERISA.

2. On September 30, 2002, the Court entered a final judgment in the Class's favor worth approximately $284 million.

3. On August 1, 2003, the Seventh Circuit affirmed the Court's judgment with a modification. As a result of the modification, the estimated judgment was reduced to approximately $255 million. The modification did not result in any Class member who was

entitled to additional benefits under the Court's judgment receiving no benefits under the modified judgment.

4. On December 5, 2003, this Court granted preliminary approval to the settlement of this case on the terms set forth in the Settlement Agreement as previously submitted to the Court. The value of the increased benefits payable to Class Members under the terms of the proposed settlement is $239 million, representing a $16 million (6.27 percent) reduction from the $255 million value of the modified judgment.

5. Until the proposed settlement of $239 million was reached, the Plan intended to seek certiorari of the Seventh Circuit's opinion.[1] Class counsel evaluated the risk of certiorari being granted and the Seventh Circuit's opinion being reversed or modified at between 1-3%. *See* Declaration of David Frederick. Class counsel believes the most likely modification, if any, of the Seventh Circuit's judgment in the Supreme Court would have been on the so-called pre-retirement mortality issue in that this Court's opinion and the Seventh Circuit's opinion are the first opinions in the country on the issue. Another case on the subject is currently pending before the Sixth Circuit court of appeals; thus, the possibility for a split in the circuits existed. If successful, the appeal of the pre-retirement mortality issue would have reduced the judgment by roughly $70 million, and many Settlement Class members would have received no additional benefits.

6. In addition, the Plan might have sought review of a fee award granted to Class counsel by the Court. The Seventh Circuit has held that "it is not possible" to make class action payments to class members "until the attorneys' stakes have been determined." *In re Synthroid*

---

[1] The Plan has indicated it will pursue the certiorari petition course if the proposed settlement is not approved.

*Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003). Although Class counsel believes that the Plan had various problems with pursuing such an appeal if the fee award were from the common benefit produced by the litigation, disposing of the appeal would have likely taken an additional year. The Court's judgment was only accruing interest at 1.68%; thus, delivering slightly reduced benefits to the Settlement Class members now will likely be to their financial betterment even if all of the Plan's post-judgment maneuvers were unsuccessful.

7. Class counsel believes that the Plan was intending to file a motion on the grounds that some of the individuals listed in Class counsel's database were participants in a union plan and not the RIGP. Again, Class counsel did not believe that such a motion would have had merit, but the denial of the motion would have been an appealable order and may have occasioned further delay in some or all of the Class members receiving their benefits.

8. Finally, the law is clear that a distribution of attorney's fees and costs in the context of a settlement does not result in taxable income to the Settlement Class members. *See, e.g.,* Private Letter Ruling 200344022 (attached); Private Letter Rulings 200009046 and 200106021; Rev. Rul. 80-364, 1980-2 C.B. 294; *Eirhart v. Libbey-Owens Ford Co.*, 726 F. Supp. 700, 706 (N.D. Ill. 1989). No similar authority exists in the context of a judgment, and an argument could be crafted that the payment of fees and costs in the context of a judgment might result in the treatment of the attorneys' fee distribution as taxable income to the Settlement Class members. Class counsel considered this risk in determining the adequacy of the proposed discount of the modified judgment the Settlement Fund represents.

9. On December 15, 2003, Class Counsel mailed notice of the proposed settlement and attorneys' fee request to the last known addresses of the individuals listed on the spreadsheets provided to the Court. The notice included a court-ordered procedure by which an individual

Class member could object to any aspect of the proposed settlement. While a total of eight (8) Class members objected to the requested attorneys' fee, only two (2) individuals objected to a settlement term. Neither of these objectors would receive any additional benefits under either the judgment as modified by the Seventh Circuit or the terms of proposed settlement, and therefore neither has standing to object.[2]

Discussion

10. "It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement." *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312 (7th Cir. 1980). This policy applies with particular force to class actions, which, because of their unusual complexity and expense, impose a particularly heavy burden on litigants and the judicial system. *See id.* at 313; *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *Air Line Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980) ("Federal courts look with great favor upon the voluntary resolution of litigation through settlement. This rule has particular force regarding class action lawsuits.") (citation omitted), *aff'd*, 455 U.S. 385 (1982). Thus, in reviewing a district court's order approving a settlement, "[c]ourts of appeal view the facts in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315.

11. To approve a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, a court must find that it is fair, reasonable, and adequate. *See id.* at 313. "[T]he court

---

[2]*See In re First Capital Holdings Corp. Financial Products Securities Litigation*, 33 F.3d 29, 30 (9th Cir. 1994), dismissing appeal of class member who objected to class counsel fee award because she lacked standing. The class member was not entitled to an award of damages and therefore was not "aggrieved" by the attorney's fees award.

4

must weigh the probability and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise agreement, taken as a whole, is in the best interest of the parties seeking relief." *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 427 (7th Cir. 1977); *see also Isby*, 75 F.3d at 1199 ("[Courts] do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness.").

12. The proposed settlement in this case clearly meets the test. The proposed settlement calls for payments to Settlement Class members from a $239 million Settlement Fund. Settlement Class members will be entitled to roll the distributions over into tax deferred savings and/or retirement plans or receive immediate cash distributions, at their election.

13. The individual settlement payments vary from a few dollars to hundreds of thousand dollars. The estimated average payment under the proposed settlement will be approximately $23,000, or about $1,700 less than the $25,000 average estimated payment amount under the judgment as modified by the Seventh Circuit, a payment which might not have been made for over a year if at all.

14. Coupled with the small risk of receiving nothing or significantly less than the full amount, the anticipated reduction in attorneys' fees and costs award, the amount of time the Settlement Class member will have to invest the money as opposed to earning 1.68%, and the risk that the amount would be reduced by income tax withholding requirements that are no longer a risk, the Settlement Class members are financially benefitting from the proposed settlement. For instance, if the settlement results in a decrease in a $25,000 recovery of approximately $1,700, and we assume a one-year delay in payment absent the settlement, with post-judgment interest at 1.68%, but a conservative 5.45% return if the class members receive their money now

(based on the current 20-yr. AAA corporate bond rate) the loss in interest alone would be $849. 1.68% x $25,000 = $420; 5.45% x $23,300 = $1,269; $1,269 - $420 = $849.

15. The potential adverse tax consequences associated with the payment of attorneys fees in the context of a judgment is even more significant. Suppose the Court awarded a 31% fee from a $25,000 judgment amount, or $7,750. If the payment of the attorneys' fees is treated as taxable income to the employee, Xerox would withhold income tax from the balance of the employee's lump-sum distribution to pay the tax owed on the amount of the attorneys' fees paid from the Plan on behalf of the employee. Under IRC § 212, certain Class members who elect to itemize their deductions could claim a deduction for the $7,750 paid to their attorneys. However, not all taxpayers can obtain the full benefit of a deduction for this expense.[3] The practical effect of this potential adverse income tax treatment would result in percentage reductions in benefits to most Class members that would exceed the amount of the settlement reduction. In addition, many Class member's would lose the ability to transfer the amount of taxes withheld into an IRA and thereby defer the tax liability with respect to the payment of attorneys' fees.

16. Perhaps the best indication of the reasonableness of the settlement is the reaction of the class to the settlement. There have been only two objections to any term of the proposed settlement and none by a Class member who is entitled to receive additional benefits. The near complete absence of Class member disapproval here is especially significant in light of the direct mail Notice provided to each individual identified as a potential Class member.

---

[3] Pursuant to IRC § 67(a), the miscellaneous itemized deductions are allowed only to the extent that the aggregate of the deductions exceeds 2 percent of a taxpayer's adjusted gross income. In addition, the benefit of itemized deductions is phased-out for certain higher income taxpayers. IRC § 68(a).

17. Class counsel finds that the proposed settlement reflects an appropriate balance between the likelihood of ultimate success on the merits, which is very high, and the probability or possibility of 1) a Supreme Court victory for the Defendant and of no recovery for the Class members, 2) a Supreme Court victory for the Defendant on the pre-retirement mortality issue and reduced payments for the Settlement Class, 3) as much as a one year delay in delivering the benefits to the Class members, which in light of the very low statutory post-judgment interest rate will likely be to their detriment, 4) the treatment of the payment of attorneys' fees as taxable income to the Settlement Class members, and 5) the general ease at which payments can be made to the Settlement Class members in the context of settlement as opposed to an adversarial posture.

18. Class counsel is not unmindful that this case has settled at a time when the risk that the judgment amounts may be discounted by further appellate review is very remote. However, the practical effect of the proposed settlement puts the Settlement Class members in the same or perhaps better position than if the case were litigated to the bitter end. Class counsel would not be fulfilling their duty to the Class members by continuing to fight when nothing will be gained and the Class members face the real prospect of suffering a financial loss as a result of the continued fight.

## Conclusion

19. The settlement is fair, reasonable and adequate, and should be approved in its entirety.

WHEREFORE, Class counsel prays the Court grant final approval to the proposed settlement, and order such other and further relief as deemed appropriate in the premises.

KOREIN TILLERY, LLC

By _____
Steven A. Katz
Douglas R. Sprong
10 Executive Woods Court
Belleville, Illinois 62226
(618) 277-1180
Fax: (618) 277-9804

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Ave.
Denver, CO 80209
(303) 296-6383
Fax: (303) 296-6652

ATTORNEYS FOR THE CLASS

Certificate of Service

I hereby certify that on January 20, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that on January 20, 2004, I mailed by United States Postal Service, the foregoing to the following:

Richard J. Pautler
One Firstar Plaza, 34th Floor
St. Louis, MO 63101

Evan R. Chesler
825 Eighth Avenue
New York, NY 10019-7475



8